IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

DISH NETWORK CORPORATION AND          :
DISH NETWORK L.L.C.,                  :
                                      :
            Dish Network,             :
                                      :
      v.                              :   No. 2009 CV 00447-JLK-MEH
                                      :
ARCH SPECIALTY INSURANCE COMPANY;     :
ARROWOOD INDEMNITY COMPANY;           :
NATIONAL UNION FIRE INSURANCE         :
COMPANY OF PITTSBURGH, PA.; TRAVELERS :
INDEMNITY COMPANY OF ILLINOIS; AND XL :
INSURANCE AMERICA, INC.,              :
                                      :
            Defendants.               :

**DISH NETWORK'S COMBINED MOTION AND MEMORANDUM
TO COMPEL DISCOVERY FROM ALL DEFENDANTS
AND FOR ATTORNEY FEES AND COSTS**

Dish Network Corporation and Dish Network L.L.C. (collectively, "Dish Network") submit

this combined motion and memorandum of law, pursuant to Federal Rule of Civil Procedure 37(a)

and D.C.Colo.LCivR 7.1, to:  (1) compel discovery from the defendant-insurers (collectively, the

"Insurers") and (2) recover from the Insurers the attorney fees and other expenses incurred in the

filing of Dish Network's motion.[1]

## INTRODUCTION

This is an insurance coverage action through which Dish Network seeks, among other

things, a defense against any claim asserted and indemnification for any damages paid in an

underlying lawsuit captioned as:  *Ronald A. Katz Technology Licensing, L.P. v. EchoStar Satellite*

---

[1]         Prior to filing this motion, Dish Network conferred in good faith with the Insurers, pursuant to
D.C.Colo.LCivR 7.1.A., in an attempt to resolve the discovery disputes addressed herein.  The efforts in that regard
are recounted in the certification of Dish Network's counsel as set forth in the declaration of Lee M. Epstein (the
"Epstein Dec."), dated October 26, 2009, and submitted in support of Dish Network's motion to compel.

*L.L.C.*, Case No. 07-03151 WDB (N.D. Cal.) (the "*Katz Technology Lawsuit*").[2]  The parties agreed to litigate this case in phases, with Phase One devoted to the Insurers' duty to defend the interests of Dish Network in the *Katz Technology Lawsuit*.  That agreement is reflected in the Stipulated Scheduling and Discovery Order entered by the Court (attached as Ex. "1" to the Epstein Dec.).  In issuing that Order, the Court considered and rejected the Insurers' contention that discovery during Phase One was unnecessary and allowed a period of discovery extending until November 13, 2009. (*See* Stipulated Scheduling and Discovery Order at 23, annexed to the Epstein Dec. at Ex. 1).

Consistent with the Stipulated Scheduling and Discovery Order, Dish Network propounded discovery for the purpose of, among other things, eliciting information concerning the meaning of the operative insurance policy language, including evidence reflecting alternative, reasonable interpretations of that language.  For the most part, the Insurers objected to the discovery sought by Dish Network and refused to produce responsive information.  They argued generally that the discovery sought by Dish Network is not relevant in this duty to defend phase of the case.

The position advanced by the Insurers is misguided.  As discussed fully herein, the discovery sought by Dish Network is highly relevant and the Insurers should be compelled to produce the information sought by Dish Network.  Moreover, the Insurers have failed to comply with the initial disclosure requirements of Fed. R. Civ. P. 26(a) and should be compelled to comply fully with those requirements.  In light of the Insurers' failure to comply with its discovery and disclosure obligations, Dish Network is also entitled to an award of attorneys' fees and expenses.

---

[2]     EchoStar Communications Corp. has since been renamed Dish Network Corporation and EchoStar Satellite L.L.C. has since been renamed Dish Network L.L.C.

## LEGAL ARGUMENT

I.    **The Insurers Should Be Compelled To Respond Fully To Interrogatory No. 7 Which Seeks Information Concerning The Insurers' Membership In ISO And Dates Thereof**

Dish Network seeks to compel complete responses to a single one of its First Set of Interrogatories (attached to the accompanying Epstein Affidavit as Ex. 2).  That interrogatory provides, in full, as follows:

- **Interrogatory No. 7:**  State whether **You** have ever been a member of **ISO** and, if so, the dates of **Your** membership.

An appreciation of the relevance of the ISO-related information sought by Interrogatory No. 7 requires some background in the nature of liability insurance in general, and Advertising Injury Liability insurance in particular.

This case concerns the respective rights and obligations of Dish Network and the Insurers under the Advertising Injury Liability coverage portion of the Commercial General Liability ("CGL") insurance policies sold to Dish Network.  (*See generally* Stipulated Scheduling and Discovery Order at 8-18, annexed to the Epstein Dec. at Ex. 1).  As is typical of CGL insurance policies, the Advertising Injury Liability insurance policy language at issue in this case was promulgated by the Insurance Services Office ("ISO").[3]   ISO first introduced personal and advertising injury liability coverage in 1973 as part of the Broad Form Comprehensive General Liability Endorsement ("Broad Form Endorsement").   J. Thomas McCarth*y, McCarthy on Trademarks & Unfair Corporation*, § 33:5 at 33-10 (4th ed. 2009) ("*McCarthy*"); *see also State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 n. 2 (11th Cir. 2004).  With regard to

---

[3]     ISO "is an insurance industry-supported organization that develops standard insurance policy language." *Weitz Co. LLC v. Mid-Century Ins. Co.*, 181 P.3d 309, 311 (Colo. Ct. App. 2007) (citation omitted).

personal and advertising injury liability coverage, the Broad Form Endorsement provided as follows:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of … Personal Injury or Advertising Injury to which this insurance applies … arising out of the conduct of the named insured's business….
>
> "Advertising Injury" means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copy right, title or slogan.

*McCarthy*, at 33-10 (alteration in original); *see also Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983, 986-87 (10th Cir. 1998) (prior to 1986, CGL policies typically defined advertising injury as injury arising out of, among other things, "privacy" and "unfair competition"). The 1973 Broad Form Endorsement specifically excluded coverage for certain types of infringement claims, but not patent infringement claims. *McCarthy*, at 33-10.[4]

In 1986, ISO amended its standard form CGL policy and revised the definition of "advertising injury" to mean injury arising out of one or more of the following offenses:

(a)    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations' goods, products or services;

(b)    Oral or written publication of material that violates a person's right of privacy;

(c)    Misappropriation of advertising ideas or style of doing business; or

(d)    Infringement of copyright, title or slogan.

---

[4]    That exclusion purported to bar coverage for claims of:

infringement of trademark, service mark or trade name, other than titles or slogans, by use thereof on or in connection with goods, products or services sold, offered for sale or advertised.

*Id.*

4

*McCarthy*, at 33-10-11; *see also Novel*, 141 F.3d at 986-87.  This definition of "advertising injury" is set forth in the majority of the insurance policies at issue in this case.  (*See* Stipulated Scheduling and Discovery Order at 8-18, annexed to the Epstein Dec. at Ex. 1).  The 1986 form removed the terms "piracy" and "unfair competition" from the list of advertising injury offenses and replaced them with the offense of "misappropriation of advertising ideas or style of doing business." *McCarthy*, at 33-11; *Novell*, 141 F.3d at 987.  Nevertheless, ISO explained, at the time, that no change was intended in the scope of coverage:

> Coverage in basic policy, simplified with no change in scope.  Coverage triggered, as in current policy, by offense committed during policy period.

*McCarthy*, at 33-11 (citing ISO Introduction and Overview for the 1986 Standard Form Commercial General Liability Policy Revision (April 1985)).

In 1998, ISO revised the standard form CGL policy further by deleting the phrase "advertising injury" and replaced it with the phrase "personal and advertising injury," which it defined as:

> (d)     oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations' goods, products or services;

> (e)     oral or written publication of material that violates a person's right of privacy;

> (f)     the use of another's advertising idea in your "advertisement"; or

> (g)     infringing upon another's copyright, trade dress or slogan in your "advertisement."

*McCarthy*, at 33-11-12; *see also Steinberg*, 393 F.3d at 1231 n. 2*.  This language purportedly is contained in one of the insurance policies at issue in this case.  (*See* Stipulated Scheduling and Discovery Order at 15, annexed to the Epstein Dec. at Ex. 1).

Thereafter, in 2001, ISO added an exclusion purporting to bar coverage for personal and advertising injury:

> arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your 'advertisement,' of copyright, trade dress or slogan.

*McCarthy*, § 33:15 at 33-44*; see also Steinberg*, 393 F.3d at 1251 n. 2. That exclusion is purportedly in one of the insurance policies at issue in this case. (*See* Stipulated Scheduling and Discovery Order at 6, annexed to the Epstein Dec. at Ex. 1).

The foregoing history and evolution of Advertising Injury Liability coverage raises numerous questions that Dish Network is attempting to answer through discovery. For example:

1.      Did the omission of patent infringement from the exclusion for certain enumerated infringement claims (such as "trademark, service mark or trade name") in the 1973 Broad Form Endorsement connote an intent by insurers to cover patent infringement claims?

2.      Did the deletion in 1986 of the exclusion for certain enumerated infringement claims connote an intent by insurers to cover infringement claims? *See, e.g., Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group*, 59 Cal. Rptr.2d 36, 46-47 (Cal. Ct. App. 1996) ("the fact that the trademark exclusion was dropped from the policy could contribute to the objectively reasonable expectation that a trademark infringement was now a covered act under the advertising injury clause").

3.      Did ISO's representation in 1986 that there was no change in the scope of coverage when the definition of advertising injury was revised by deleting the word "piracy" and inserting the phrase "misappropriation of advertising ideas or style of doing business" connote an intent to continue insuring patent infringement claims that were previously covered as a form of "piracy?" *See, e.g., Union Ins. Co. v. Land and Sky, Inc.*, 529 N.W.2d 773, 778 (Neb. 1995); *New Hampshire*

*Ins. Co. v. R.L. Chaides Constr. Co.*, 847 F.Supp. 1452, 1456 (N.D. Cal. 1994); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Siliconix Inc.*, 729 F.Supp. 77, 79 (N.D. Cal. 1989); *Omnitel v. Chubb Group of Ins. Cos.*, 26 U.S.P.Q.2d 1933 (Cal. Super. Ct. 1993).[5]

4.      What is the import of ISO's modification of the definition of advertising injury in 1998 by deleting the phrase "misappropriation of advertising ideas or style of doing business" and replacing it with the phrase "the use of another's advertising idea in your advertisement?"

5.      Did ISO's adoption of an intellectual property exclusion purportedly applicable to advertising injury claims arising out of the infringement of patent connote that absent such an exclusion, patent infringement claims were covered? *See Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1029 (Colo. Ct. App. 2003) ("An exclusion is unnecessary unless the excluded event would otherwise fall within the coverage provisions.") (citation omitted).

These issues are equally as important in the context of an insurer's duty to defend as they are in the context of an insurer's duty to indemnify and, they alone, warrant the discovery sought by Dish Network.  Indeed, the courts of Colorado have relied on this precise type of drafting history in interpreting insurance policy language.  For example in *Weitz*, the Colorado Court of Appeals examined the ISO drafting history of an additional insured endorsement in determining that the meaning of the phrase "arising out of your ongoing operations" did not cover "completed operations" and, as a consequence, the insurer had no duty to defend or indemnify.  *Weitz*, 181 P.3d at 314-15.  Moreover, to the extent that the Insurers were members of ISO, they are bound by ISO's representations regarding the meaning and scope of the policy language at issue in this case.  *See*

---

[5]      In this regard, it is important to note that the American International Companies, of which defendant National Union is a member, represented, in marketing materials for its "Patent Infringement Liability Insurance," that coverage for "piracy" under CGL policies may implicate an insurer's duty to defend.  *See* discussion, *infra* at 21-22.

*Gerrish Corp. v. Universal Underwriters Ins. Co. Kansas City, Mo.,* 754 F.Supp. 358, 370 (D. Vt. 1990), *aff'd*, 947 F.2d 1023 (2d Cir. 1991).

For all these reasons, the Insurers' objection to Interrogatory No. 7[6] on the basis of relevancy should be rejected. In addition, any boilerplate or generalized objections, (*see, e.g.,* Epstein Dec. at Ex. 7 [National Union]), should also be rejected for the reasons set forth *infra* at 26-27. In all, the Insurers should be compelled to respond to Interrogatory No. 7 and, thereby, provide information concerning their membership in ISO and the dates thereof.

## II.    The Insurers Should Be Compelled To Produce Information Responsive To Dish Network's First Set Of Requests For Production

The Insurers responded to Dish Network's First Set of Requests for Production ("the Requests," attached to the Epstein Dec. at Ex. 8) largely with objections. With three exceptions,[7] they refused to produce any documents beyond the insurance policies sued on, the underlying complaints and the correspondence to and from Dish Network regarding the claim. (*See* Insurers' objections and responses to the Requests, attached to the Epstein Dec. at Exs. 9 [Arrowood], 10 [Travelers], 11 [XL], 12 [Arch], and 13 [National Union]). As set forth in more detail below, the Insurers' responses to the Requests are largely insufficient and the Court should compel them to produce all responsive documents to the Requests.

### A.    The Documents Requested By Dish Network Are Relevant For Purposes Of Discovery

In objecting to Dish Network's Requests, the Insurers assert generally that the information sought by the Requests is not relevant to the duty to defend phase of this action.[8] As

---

[6]        The Insurers' Objections and Responses to Dish Network's First Set of Interrogatories are annexed to the Epstein Dec. at Exs. 3 (Arrowood), 4 (Travelers), 5 (XL), 6 (Arch) and 7 (National Union).

[7]        Three Insurers, Arrowood, XL and Arch, produced at least portions of their respective underwriting files.

[8]        Although the parties agreed to restrict Phase One of this action to the single issue of the Insurers' duty to defend, those Insurers that have already moved for summary judgment are seeking judgment on all claims asserted

demonstrated below, however, the information sought by the Requests is relevant to the Insurers'

duty to defend and fully discoverable under the Federal Rules.

### 1. The Standard For Relevancy Makes The Scope Of Discovery Under Rule 26 Very Broad

As a threshold matter, the scope of discovery in federal court is broad since it is based on

a very liberal definition of relevancy. For purposes of discovery, information is "relevant" if it

has the potential to lead to the discovery of admissible evidence:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense - including the existence, description, nature,
> custody, condition, and location of any documents or other tangible things . . . .
> Relevant information need not be admissible at the trial if the discovery appears
> reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Indeed, the Tenth Circuit has held that "discovery is not limited to

issues raised by the pleadings, for discovery itself is designed to help define and clarify the

issues." *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir. 1995) (quotation

omitted). Whether information sought in discovery meets the relevancy standard in Rule

26(b)(1) "is a broad determination, the goal of which is to allow the parties to discover whatever

is necessary to prove or disprove their cases." *Medcorp, Inc. v. Pinpoint Techs., Inc.*, Civ.

Action No. 08-cv-00867-MSK-KLM, 2009 WL 1049758, at *2 (D. Colo. Apr. 20, 2009)

(citations omitted).[9]

As this Court has noted, "discovery should not necessarily be prohibited merely because

it relates to claims that one party asserts are based on an insufficient theory." *Professional

Solutions Ins. Co. v. Mohrlang,* Civ. Action No. 07-cv-02481-REB-KLM, 2008 WL 4426016, at

*3 (D. Colo. Sept. 25, 2008) (citations omitted). Indeed, by producing information in discovery,

---

by Dish Network, including those claims involving the Insurers' breaches of their duties to indemnify and act in
good faith. (*See* Epstein Dec. at ¶ 10).

[9]    All unreported opinions are attached to the Epstein Dec. at Exs. 20-27.

a party does not waive any objections it has made concerning the relevancy or materiality of the information, "since [those] objections are generally raised at trial or in dispositive motions." *Abouhalima v. Gonzales*, Civ. Action No. 05-cv-02653-REB-MEH, 2007 WL 549831, at *2 (D. Colo. Feb. 16, 2007).  As set forth below, the information sought by the Requests is relevant to Dish Network's theory of this case and the burden is to be borne by the Insurers.  Thus, the Insurers should be compelled to produce that information.  To the extent they dispute the relevance or materiality of that information, the Insurers can argue those points later in dispositive motions or at trial.

### 2.    The Documents Requested By Dish Network Are Relevant

The Insurers argue that only their insurance policies and the underlying complaints filed in the *Katz Technology Lawsuit* are relevant to resolving their duties to defend.[10]  In  support  of their position, the Insurers rely on cases such as *Cyprus Amax Minerals Co. v. Lexington Insurance Co.*, 74 P.3d 294, 299 (Colo. 2003), which recites the rule that "courts must look no further than the four corners of the underlying complaint" in determining an insurer's duty to defend.  In relying on that rule to avoid responding to Dish Network's discovery, the Insurers confuse a court's consideration of evidence pertinent to the claims asserted in the underlying litigation with a court's consideration of information pertinent to the scope of coverage provided under their policy language.

As this Court has recognized, the law restricts consideration of the nature of the underlying claim to what is pled in the underlying complaint, for the benefit of the policyholder:

> Basing the [duty to defend] determination solely on the complaint supports the insured's legitimate expectation of defense in situations in which the underlying

---

[10]    The following statement by XL is representative of the position taken by Defendants:  "[A] carrier's defense obligation is determined by examination of the underlying Complaint and the insurance policy; XL objects to any Request seeking identification of facts outside of these documents."  (Epstein Dec. at Ex. 11 at 3).

complaint falls within <u>the scope of the insurance policy</u>, regardless of whether coverage will ultimately exist.

<u>Mountain States Mut. Cas. Co. v. Kirkpatrick</u>, Civ. Action No. 06-cv-00221-WDM-MEH, 2007 WL 707461, at *1 (D. Colo. Mar. 6, 2007) (emphasis added).  As reflected in <u>Mountain States</u>, however, the scope of the pertinent insurance policy always remains a fundamental consideration in determining the duty to defend.[11]  *See also Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991) ("An insurer's duty to defend arises when the underlying complaint against the insure[d] alleges any facts that might fall within coverage.") (citation omitted).  In *Hecla Mining*, for example, the Colorado Supreme Court reasoned that "[t]he determination of a duty to defend in this case depends on the terms in the insurance policy, and the interpretation of those terms based upon the principles of contract interpretation."  *Helca Mining*, 811 P.2d at 1090.  Thus, the fact that Phase One of this case concerns the Insurers' duty to defend makes discovery into the scope of insurance coverage no less essential.

Here, the discovery that Dish Network seeks goes directly to the scope of the insurance policy language at issue.  In order to resolve the Insurers' duty to defend, the Court will necessarily need to interpret the language of their policies and determine whether it is susceptible to more than one reasonable interpretation.  *Helca Mining*, 811 P.2d at 1092 (court determines that insurers had duty to defend upon concluding that the "sudden and accidental" exception to a pollution exclusion was ambiguous).  If so, it is ambiguous and must be interpreted against the insurer and in favor of coverage.  *Id.; see also*, *Weitz*, 181 P.3d at 312; *Fight Against Coercive*

---

[11]    Dish Network anticipates that the Insurers will rely on this Court's opinion in *Mountain States* to support their objections.  In *Mountain States*, this Court concluded that an insurer's claim file was not relevant in a dispute over its duty to defend.  In support, this Court stated that the policyholder's "legitimate expectation of defense is based on the factual allegations of the underlying complaint."  *Id.* at *2.  That is true as far as it goes.  While the factual allegations of the underlying complaint are certainly relevant, the meaning or ambiguity of the operative policy language is equally important.  *See Cotter Corp. v. American Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 827, 828 (Colo. 2004) (in making the duty to defend determination, the four corners of the underlying complaint and the insurance policy are considered); *Helca Mining*, 811 P.2d at 1090 (the determination of an insurer's duty to defend turns on the terms of the insurance policy and the interpretation of those terms).

*Tactics Networks Inc. v. Coregis Ins. Co.,* 926 F.Supp. 1426, 1430 (D. Colo. 1996). As one court has stated, "[W]hether language is ambiguous is a legal determination that often cannot be made without looking at the factual context of a case." *Mohrlang,* 2008 WL 4426016, at *1 (citation omitted). Ambiguity may also be evidenced by an insurer's failure to utilize alternative language that would have put the matter beyond reasonable question. *Coregis*, 926 F.Supp. at 1433.

Furthermore, an insurer relying on an insurance policy exclusion in attempting to avoid its duty to defend, as is the case here, bears a heavy burden. *See, e.g.*, *Compass Ins. co. v. City of Littleton,* 984 P.2d 606, 614 (Colo. 1999). The insurer must defend unless it can prove both that the allegations in the underlying complaint fall solely and entirely within the exclusions upon which it relies, and that those exclusions are not subject to any other reasonable interpretation. *Id.* at 618. If the exclusionary language is reasonably susceptible to more than one interpretation, that language is ambiguous and must be interpreted against the insurer. *See, e.g.*, *Weitz,* 181 P.3d at 312. The Insurers therefore bear the heavy burden in this case of proving that the exclusionary language upon which they rely encompasses all allegations in the underlying *Katz Technology Lawsuit* and that it is not ambiguous. *Cyprus,* 74 P.3d at 301 ("An insurer has a heavy burden to overcome in avoiding the duty to defend, such that 'the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot.'") (quoting *Compass*, 984 P.2d at 613-14).

Accordingly, the scope of the insurance policy language at issue will play a large role in resolving the Insurers' duty to defend Dish Network. As discussed above, that determination cannot be made in a vacuum. In fact, Colorado has a well established protocol under which courts conditionally admit extrinsic evidence to be used in determining whether particular language within an insurance policy or other contract is ambiguous. Such evidence includes, but

is not limited to, "evidence regarding the meaning of the written terms, including evidence of local usage and of the circumstances surrounding the making of the contract." *Eppich v. State Farm Mut. Auto Ins. Co.*, Civ. Action No. 08-cv-01697, 2009 WL 3162245, at *3 (D. Colo. Sept. 30, 2009) (quotation omitted); *see also, e.g., Mohrlang*, 2008 WL 4426016, at *1; *D.C. Concrete Mgmt., Inc. v. Mid-Century Ins. Co.*, 39 P.3d 1205, 1207-08 (Colo. Ct. App. 2001).  If a court finds, after considering the extrinsic evidence, that the policy or contract language at issue is not ambiguous, the extrinsic evidence is stricken and the court will give effect to the terms of that policy or contract.  *See, e.g.*, *Level 3 Communications, LLC v. Liebert Corp.,* 535 F.3d 1146, 1155 (10th Cir. 2008); *Arenberg v. Central United Life Ins. Co.,* 18 F.Supp.2d 1167, 1179 (D. Colo. 1998); *D.C. Concrete*, 39 P.3d at 1207-08.  Of course, the conditional admission of this sort of interpretative evidence can only occur after such information is discovered and produced in the first instance.[12]

Overall the documents sought by Dish Network "[lend] guidance to the meaning of policy language" in that they may show alternative, reasonable interpretations of the pertinent policy provisions by the Insurers or others, or ways in which those provisions could have been worded to "[put] the matter beyond reasonable question."  *See Mohrlang*, 2008 WL 4426016, at *2 (citation omitted); *Coregis*, 926 F.Supp. at 1433.  Accordingly, the Court should issue an

---

[12]    Dish Network anticipates that the Insurers will contend that evidence of ambiguity can only be considered after the court first deems the language ambiguous.  That argument is wrong for two reasons.  First, as discussed above, Colorado courts conditionally admit extrinsic evidence in the first instance in order to determine whether language is ambiguous.  Second, if insurance policy language is ambiguous, it is construed in favor of coverage and, therefore, there is no need to consider additional extrinsic evidence of ambiguity.  In any event, courts have deemed the policy language at issue here to be ambiguous.  *See, e.g., Novell*, 141 F.3d at 987 ("courts have construed the phrase 'misappropriation of … style of doing business' in varying ways.").  Of course, a split of judicial authority on the meaning of policy language is indicative of ambiguity.  *Coregis*, 926 F.Supp.2d at 1433 ("That different courts have arrived at conflicting interpretations of similar clauses in other policies is indicative of the Policy's ambiguity."); *see also Lebas Fashions*, 59 Cal. Rptr.2d at 43 (court concludes that phrase "misappropriation of advertising ideas or style of doing business" is ambiguous); *Super Duper Inc. v. Travelers Prop. Cas. Co. of Am., et al.*, No. 26717, 2009 WL 2948516, at **3-4 (S.C. Sept. 14, 2009) (term "misappropriation" within phrase "misappropriation of advertising ideas or style of doing business" is ambiguous).

order compelling the Insurers to produce information responsive to the Requests referenced below.

### 3.    The Specific Requests For Production

Set forth immediately below are Dish Network's specific Requests for Production, grouped generally by topic, along with the parties' respective positions.

### The Liability Insurance Policies

- **Request No. 1:**  Produce a complete copy of each of the **Liability Insurance Policies You** sold to, or subscribed to, either of the **Plaintiffs** (whether it be a primary, umbrella, or excess insurance policy), including all endorsements, exclusions, and riders thereto.

Request No. 1 seeks the production of all liability insurance policies that the Insurers sold to Dish Network.  In response, the Insurers produced only those insurance policies that are the subject of this litigation, and refused to produce all liability insurance policies they sold to Dish Network.  As discussed above, however, alternative policy wordings that may be reflected in those other insurance policies are highly relevant in determining whether the Insurers' policy language at issue in this case is ambiguous.  *Coregis*, 926 F.Supp. at 1433.  The Insurers should therefore be compelled to produce all liability insurance policies that they sold to Dish Network.

### Documents Concerning The Underwriting, Drafting, Negotiation and Sale of The Liability Insurance Policies

- **Request No. 2:**  Produce a complete copy of each of the underwriting files maintained by **You** with respect to:  either of the **Dish Network** or any of the **Liability Insurance Policies You** sold to either of the **Dish Network**.

- **Request No. 4:**  Produce all **documents referring or relating to** the underwriting, drafting, negotiation, approval, or sale of any of the **Liability Insurance Policies**.

- **Request No. 5:**  Produce all insurance applications, or any other **documents** and/or information, that **You** requested, either directly or indirectly (through an insurance agent, broker, or other entity), from either

14

of the **Dish Network,** in order for **You** to assess the risk associated with the **Liability Insurance Policies**.

Request Nos. 2, 4 and 5 seek the production of the relevant underwriting files and documents related to the drafting, negotiation, approval and sale of the CGL policies at issue here. That information may set forth the scope of the coverage encompassed by the insurance policies as well as any alternative interpretations of those policy provisions. As discussed above, that information is clearly relevant and discoverable.

In addition, the underwriting files may reflect the Insurers' understanding of the risks they were insuring. For example, the Insurers rely on an exclusion purporting to exclude coverage for advertising injury committed by an insured whose business is "advertising, broadcasting, publishing or telecasting." (*See* Stipulated Scheduling and Discovery Order at 6, annexed to the Epstein Dec. at Ex. 1). In light of that reliance, the Insurers' understanding of the nature of Dish Network's business is highly relevant.

National Union refused to respond at all to Request Nos. 2, 4 and 5, taking the position that its policy language is not ambiguous and the information sought is not relevant to the duty to defend. (*See* Epstein Dec. at Ex. 13). That argument may be raised in briefing dispositive motions, but it does not preclude the discovery that Dish Network seeks. While Travelers represented that it would make responsive information available, over one month later, it has still failed to do so. (*See* Epstein Dec. at Ex. 10). The remaining three Insurers, Arrowood, XL and Arch, produced what they contend are their entire underwriting files in response to Request Nos. 2 and 4. (*See* Epstein Dec. at Exs. 9, 11, & 12). Accordingly, only National Union and Travelers need be compelled to produce documents and information responsive to Request Nos. 2, 4 and 5.

- **Request No. 9:**    For the period beginning in 1976 and ending with the present, produce all **Form Language** utilized by **You** and **referring or relating to** insurance coverage for claims of **advertising injury**.

- **Request No. 11:**  Produce all **documents referring or relating** to **Your** membership in, subscription to, or affiliations with **ISO**.

As discussed *supra* at 3-6, the insurance policy language at issue in this case was promulgated by ISO.  To the extent that any of the Insurers were ISO members, ISO acted as their agent and they are bound by ISO's drafting efforts and representations about the scope, meaning and application of the drafted language to regulators.  *See, e.g.*, *Gerrish Corp.,* 754 F.Supp. at 370 (D. Vt. 1990), *aff'd*, 947 F.2d 1023 (2d Cir. 1991).  The ISO forms utilized by the Insurers and their understanding of those forms are, therefore, highly relevant.  *Weitz Co.*, 181 P.3d at 314-15 (court considers ISO drafting history of additional insured endorsement in determining meaning of phrase "arising out of your ongoing operations.").

All of the Insurers objected to Request Nos. 9 and 11 on the basis that they seek information beyond the limited scope of Phase One (regarding the duty to defend).  (*See* Epstein Dec. at Exs. 9, 10, 11, 12, & 13).   With respect to Request No. 9, Arch referred Dish Network to the language of the Arch insurance policy, which is a nonresponsive answer. (*See* Epstein Dec. at Ex. 12).  Accordingly, all of the Insurers should be compelled to respond in full to Request Nos. 9 and 11.

### Documents Concerning Dish Network's Claim for Insurance

- **Request No. 3:**  Produce a complete copy of each claim file maintained by **You** with respect to any claims for insurance by either of the **Dish Network**, including any claims for insurance arising in connection with the **Katz Technology Lawsuit.**

- **Request No. 6:**  Produce all **documents referring or relating** to **Your** handling, investigation, review, consideration, assessment, evaluation and/or resolution of **Dish Network's** requests for insurance coverage in connection with the **Katz Technology Lawsuit**.

16

Request Nos. 3 and 6 seek the production of relevant claim files and documents related to the handling, investigation, review, consideration, assessment, evaluation and/or resolution of Dish Network's request for insurance coverage in connection with the *Katz Technology Lawsuit*. That information, including claim adjuster logs, journals or notes and internal communications such as email or memoranda is relevant to the scope of coverage of the insurance policies at issue, including the meaning of key policy provisions, or alternative interpretations of those provisions. As discussed *supra* at 10-14, documents reflecting the meaning of the policy language at issue remain as relevant in the context of an insurer's duty to defend as they are in the context of the duty to indemnify.

All of the Insurers except Arch objected to Request Nos. 3 and 6 on the basis that they sought information that was not relevant and was beyond the scope of Phase One on the duty to defend. (*See* Epstein Dec. at Exs. 9, 10, 11, & 13). As discussed above, that argument is misguided. Arrowood produced only correspondence comprising of the tender and disclaimer of coverage for the underlying *Katz Technology Lawsuit*, while Arch produced the same correspondence, as well as the complaints in the underlying *Katz Technology Lawsuit*. (*See* Epstein Dec. at Exs. 9 & 12). Travelers and National Union declined to respond to Request Nos. 3 and 6. (*See* Epstein Dec. at Exs. 10 & 13). XL objected and declined to respond to Request No. 3, and with respect to Request No. 6, XL's response was insufficient, referring only to one of its insurance policies. (*See* Epstein Dec. at Ex. 11). None of the Insurers produced any of their claim adjuster logs, journals or notes, internal email, memoranda or records, claim reports or other interpretative materials. Accordingly, each of the Insurers should be compelled to produce all documents and information responsive to Request Nos. 3 and 6.

- **Request No. 7:**  Produce all handbooks, manuals, and other **documents referring or relating to Your** procedures, guidelines, or policies for the handling of claims for **advertising injury**.

Request No. 7 seeks handbooks, manuals, and other documents referring or relating to the Insurers' procedures, guidelines, or policies for the handling of claims for advertising injury. Those documents are relevant because they may contain responsive information concerning the meaning, scope and application of key insurance policy language relied on by the Insurers.

All of the Insurers objected to Request No. 7 as being beyond the scope of proper Phase One discovery and refused to respond.  (*See* Epstein Dec. at Exs. 9-13).  As discussed *supra* at 10-14, the position advocated by the Insurers is not well supported.  Thus, the Insurers should be compelled to produce all responsive documents and information.

- **Request No. 8:**  Produce all **documents referring or relating to Your** denial of the duty to defend Dish Network against the claims asserted in the **Katz Technology Lawsuit**.

Request No. 8 seeks documents referring or relating to the Insurers' denials of their irrespective duties to defend Dish Network against the claims asserted in the *Katz Technology Lawsuit*.  Those documents are unquestionably relevant because Phase One of this litigation concerns that very duty.  Information relating to the Insurers' denial of their duty to defend may reflect the meaning, scope or application of key policy language upon which they have relied, or reference interpretative materials, authored by Insurers or others in the insurance industry, such as claim manuals, reports, memos, papers, or the like relating to the meaning, scope or application of key policy terms.

None of the Insurers provided a complete response to Request No. 8 and all but Arch asserted the same objection that the Request sought information not relevant or discoverable in

Phase One (regarding the duty to defend).  Again, Dish Network has demonstrated the error of that argument.

Travelers asserted that only its policy and disclaimer letter were properly responsive and Arrowood and XL produced only those same documents.  (*See* Epstein Dec. at Exs. 9, 10 & 11).  Arrowood also produced recent correspondence comprising of the tender and disclaimer of coverage for the *Katz Technology Lawsuit*, as did Arch.  (*See* Epstein Dec. at Exs. 9 & 12).  None of the Insurers produced any claim adjuster logs, journals, claim reports, notes, internal correspondence, memoranda or emails, correspondence with other insurance entities, such as insurance brokers or agents, or the like.  Each of the Insurers should be compelled to produce all responsive documents and information responsive to Request No. 8.

### Documents Concerning The Operative Policy Language

- **Request No. 12:**  Produce all **documents**, including guidelines, manuals, procedures, handbooks, or **drafting history documents**, **referring or relating** to any term, provision, condition, or exclusion in any of the **Liability Insurance Policies**, which **You** contend bars or limits, in any way, insurance coverage for the **Katz Technology Lawsuit**.

- **Request No. 13:**  Produce all **documents**, including guidelines, manuals, procedures, handbooks, or **drafting history documents**, **referring or relating** to any term, provision, condition, or exclusion in any of the **Liability Insurance Policies,** on which **You** rely, or intend to rely, to support any Affirmative Defense which **You** assert in **Your** Answer to the **Amended Complaint**.

- **Request No. 14:**  Produce all **documents**, including manuals, procedures, handbooks, or **drafting history documents**, concerning the meaning, scope, application, interpretation, understanding, and/or construction of the following or similar language, concepts, terms or provisions contained in the **Liability Insurance Policies**:  (a)  advertising; (b)  advertising activities; (c) advertising ideas; (d) advertising injury; (e) arising out of; (f) arising solely out of; (g) broadcasting; (h) infringement of copyright, patent, trademark, trade secret or other intellectual property rights; (i) injury; (j) injury arising solely out of **Your** advertising activities; (k) misappropriation; (l) misappropriation of advertising ideas or style of

doing business; (m) occurrence; (n) offense; (o) publishing; (p) style of doing business; and (q) telecasting.

By Request Nos. 12, 13 and 14, Dish Network seeks the production of documents which are likely to contain information concerning the meaning, scope or application of the key policy terms on which the Insurers rely. All of the Insurers objected to Request Nos. 12, 13 and 14 on the basis that the information they sought was not relevant because it was beyond the limited scope of Phase One (regarding the duty to defend). (*See* Epstein Dec. at Exs. 9-13). As discussed above at 10-14, the Insurers' argument is not well supported.

Defendant Arrowood refused to respond at all to Requests 12, 13 and 14. (*See* Epstein Dec. at Ex. 9). Indeed, all Insurers refused to respond to Request No. 14. (*See* Epstein Dec. at Exs. 9-13). The responses of the Insurers, other than Arrowood, to Request No. 12 were insufficient. Travelers referred Dish Network to only its insurance policy, disclaimer letter and Answer, while XL and Arch referred Dish Network to only their insurance policies. (*See* Epstein Dec. at Exs. 10, 11 & 12). National Union likewise stated that it was producing only its policy and the complaints in the underlying *Katz Technology Lawsuit*, as they were all that were relevant to the duty to defend. (*See* Epstein Dec. at Ex. 13).

The Insurers, other than Arrowood, also provided insufficient responses to Request No. 13. Defendant Travelers refused to respond to Request No. 13 while defendant XL claimed to have no such handbook, manual, guideline or drafting history documents, a response that is frankly not credible. (*See* Epstein Dec. at Exs. 10 & 11). Arch referred Dish Network only to its insurance policies, and National Union again took the position that only its policy and the underlying complaints were relevant. (*See* Epstein Dec. at Exs. 12 & 13). None of the Insurers produced any drafting history documents, handbooks, manuals, guidelines or any other

documents responsive to these three Requests.   Accordingly, all the Insurers should be compelled to produce all documents and information responsive to Request Nos. 12, 13 and 14.

- **Request No. 16:**   Produce any speeches made or papers written by **You**, or any of **Your** employees or representatives, **referring or relating to** insurance coverage for claims for **advertising injury** or claims of patent infringement specifically.

- **Request No. 17:**   Produce any advertising, marketing or promotional material **referring or relating to Your** insurance for claims of **advertising injury** generally or claims of patent infringement specifically.

Request Nos. 16 and 17 seek the production of speeches, papers, advertising, marketing and promotional documents related to advertising injury coverage in general and insurance coverage for patent infringement claims in particular.  That information is relevant, in that it may reveal the meaning of the operative policy language or alternative interpretations of that language.  A graphic example of the relevancy of this information was provided by the American International Companies, of which defendant National Union is a member.   Those insurers represented in marketing materials that coverage under CGL insurance policies can implicate an insurer's duty to defend its policyholder against patent infringement claims:

*Who can be subject to a patent infringement suit?*

*Any person or corporation who* manufacturers, *advertises*, sells or distributes a product, or uses a manufacturing process…maybe subject to a patent infringement suit…

*Doesn't my insurance carrier have to defend my company under the Comprehensive General Liability policy?*

*Maybe*.   There has been highly contested litigation between insurers and their insureds…Arguments have been made that language referring to unfair trade practices and/or piracy may extend coverage, or at least a duty to defend patent infringement suits…Many insurance companies are specifically excluding coverage [under their current policies] for patent infringement or are revising policy language to clarify their intent not cover this type of action.

Eugene R. Anderson, *et al., Insurance Coverage Litigation*, §16.04[E]16-76-76.1 (2010) (quoting "Patent Infringement Liability Insurance, Q & A") (emphasis added).[13]   The concession that insurers may have to defend patent infringement lawsuits under CGL insurance policies is directly contrary to the position taken in this litigation by National Union and, alone, warrants the discovery sought by Dish Network.

All of the Insurers objected to Request Nos. 16 and 17 on the basis that the information they sought was not relevant because it was beyond the limited scope of Phase One (regarding the duty to defend).  (*See* Epstein Dec. at Exs. 9-13).  Dish Network has already shown that argument to be incorrect.

While none of the Insurers provided documents or information responsive to Request Nos. 16 and 17,  Arch represented that it has no responsive documents.  (*See* Epstein Dec. at Ex 12).  Likewise, XL refused to produce documents responsive to Request Nos. 16 and 17, but represented that, having made a diligent search, it has no speeches or articles responsive to Request No. 16.  (S*ee* Epstein Dec. at Ex. 11).   National Union also refused to produce documents responsive to Requests 16 and 17, but stated that it was "unaware of" any speeches or articles responsive to Request 16; National Union did not state that it had conducted any search. (*See* Epstein Dec. at Ex. 13).  Arrowood simply refused to produce documents responsive to both Requests.  (*See* Epstein Dec. at Ex. 9).  Each of the Insurers should be compelled to produce documents and information responsive to Request Nos. 16, and 17 or to certify that, after a diligent search was made, no such documents or information were located.

---

[13]    Counsel for Dish Network obtained the above-referenced marketing document through another source and it is attached to the Epstein Dec. at Ex. 19.

**The Insurers' Document Retention Guidelines**

- **Request No. 15:** Produce all of **Your document** retention or **document** destruction policies, guidelines, instructions or rules dating from 2001 to the present.

Request No. 15 seeks documents concerning the Insurers' document retention or destruction policies and, as such, unquestionably seeks the production of relevant information. Responsive documents will enable Dish Network to assess the completeness of the Insurers' responses to all of its discovery. All of the Insurers objected to Request No. 15 on the ground that it is beyond the scope of Phase One. (*See* Epstein Dec. at Exs. 9-13). Nevertheless, Travelers represented that it would produce its document retention/destruction policies for the time period beginning with the underwriting of its policy and ending with the present; it has yet to do so. (*See* Epstein Dec. at Ex. 10). Arch represented that it has no documents responsive to Request No. 15. (*See* Epstein Dec. at Ex. 12). All of the Insurers should be compelled to produce documents and information responsive to Request No. 15, or to certify that, after a diligent search, no such documents or information were located.

**B.     The Insurers' Remaining Objections Are Also Not Well Founded**

**1.     The Insurers' Privilege Objections Provide No Basis For Their Failure To Respond**

In addition to the Insurers' objections on the ground of relevancy, most of the Insurers also objected to certain of Dish Network's Requests to the extent that any responsive documents were encompassed by the attorney-client privilege or work-product doctrine. The Requests to which such objections were raised involve largely the discovery of claim files, claim handling documents, claim manuals, handbooks and guidelines, and drafting history documents.[14]

---

[14]     Arrowood, Travelers, and National Union objected to Request No. 3 (seeking claim files) on that basis. (*See* Epstein Dec. at Exs. 9, 10 & 13). Arrowood, Travelers,  XL and National Union objected to Request No. 6 (seeking documents referring or relating to the Insurers' handling, investigation, review, evaluation, etc. of Dish

The Insurers' privilege objections provide no basis for their refusal to produce documents responsive to Dish Network's Requests. As a threshold matter, the Insurers may express any claim of privilege or protection by identifying on a privilege log and withholding, on an individual basis, each document that is supposedly privileged. More importantly, most of the documents belonging to the categories of responsive documents to which the Insurers refer would not be privileged. Under the law of this district, documents created or prepared in the everyday course of the insurance business are not protected by any privilege. *See Western Nat'l Bank of Denver v. Employers Ins. of Wausau*, 109 F.R.D. 55, 57 (D. Colo. 1985); *see also, e.g., American Banker's Ins. Co. of Fla. v. Colorado Flying Academy, Inc.*, 97 F.R.D. 515, 517-18 (D. Colo. 1983); *Hawkins v. District Court,* 638 P.2d 1372, 1378-79 (Colo. 1982). Accordingly, the Court should compel all of Insurers to produce all responsive and not privileged documents and information, withholding and entering any purportedly privileged documents on a privilege log to be promptly provided to Dish Network.[15]

---

Network's requests for coverage for *Katz Technology Lawsuit*) on that basis. (*See* Epstein Dec. at Exs. 9, 10, 11 & 13). Arrowood and XL objected to Request No. 8 (seeking documents referring or relating to the Insurers' denial of duty to defend *Katz Technology Lawsuit*) on that basis. (*See* Epstein Dec. at Exs. 9 & 11). National Union objected to Request Nos. 13 and 14 (seeking drafting history documents, manuals, handbooks, guidelines, etc. either referring or relating to any policy term on which the Insurers will rely for an Affirmative Defense or concerning the meaning of certain identified policy terms or concepts) on that basis. (*See* Epstein Dec. at Ex. 13). Travelers and National Union objected to Request No. 16 (seeking speeches or papers referring or relating to coverage for claims of advertising injury and patent infringement) on that basis. (*See* Epstein Dec. at Exs. 10 & 13).

[15] In addition, National Union's objections (Epstein Dec. at Ex. 13), based on the purportedly confidential and proprietary nature of at least some information responsive to Request Nos. 2 (underwriting file), 4 (documents referring to underwriting, drafting, negotiation, approval or sale of the Insurers' policies to Dish Network), 7 (handbooks, manuals, etc. referring or relating to procedures and guidelines for handling of claims for advertising injury), 8 (documents referring or relating to denial of duty to defend against *Katz Technology Lawsuit*), 12 (drafting history documents, manuals, handbooks, etc., referring or relating to terms in the Insurers' policies which they contend bar or limit coverage), 13 (drafting history documents, manuals, handbooks, etc. referring or relating to terms in their policies upon which the Insurers intend to rely to support their affirmative defenses), 14 (drafting history documents, manuals, handbooks, etc. referring or relating to the meaning, scope, application or interpretation of certain policy terms and concepts), 16 (speeches or papers referring or relating to coverage for claims of advertising injury or patent infringement), and 17 (advertising, marketing, promotional materials referring or relating to coverage for claims of advertising injury or patent infringement) also form no basis for the failure to produce documents and information responsive to those Requests. First, the parties are currently negotiating a stipulated confidentiality order based on a form suggested by Judge Kane. (Epstein Dec., ¶ 7). Second, again, any

Arrowood presents a special issue because it has waived any privilege in this case. In its answer to Interrogatory No. 6, seeking the identity of the person responsible for Arrowood's denial of the duty to defend, Arrowood responded, "Paula Douglas on the advice of counsel." (Epstein Dec. at Ex. 3). A party's decision made in reliance on the advice of counsel places that advice at issue in the case and results in a waiver of privilege. *See, e.g., Sedillos v. Board of Educ. of Sch. Dist. No. 1*, 313 F.Supp.2d 1091 (D. Colo. 2004); *Cunningham v. Standard Fire Ins. Co.*, Civ. Action No. 07-cv-02538, 2008 WL 2902621 at *9 (D. Colo. 2008) ("[I]f Defendants actually asserted the defense of advice of counsel, the attorney-client privilege would be waived….") (citation omitted).

The attorney-client privilege cannot be used as both a sword and a shield. *Id.* In *Sedillos*, this Court explained:

> The attorney client privilege may also be implicitly waived, and one way that is done is by raising attorney advice as a defense….[A party] cannot selectively assert the privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with [his attorney] for his own benefit. The attorney client privilege cannot be used as both a shield and a sword, and [a party] cannot claim in his defense that he relied on [his attorney's] advice without permitting the prosecution to explore the substance of that advice.

*Sedillos*, 313 F.Supp.2d at 1093 (quoting *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998)). Here, Arrowood placed its attorneys' advice in issue by representing that Ms. Douglas relied on the "advice of counsel" in denying, on behalf of Arrowood, any duty to defend Dish Network. Arrowood cannot claim that it relied on the advice of counsel in denying its duty to defend without permitting Dish Network to explore the substance of that advice. Thus, Arrowood should be compelled to produce all information responsive to Dish Network's discovery without regard to privilege.

___

such purportedly confidential documents can be entered on a privilege log provided to Dish Network, while non-confidential documents are produced.

2.     **The Insurers' Boilerplate Objections Should Be Rejected**

In their responses, most of the Insurers relied on boilerplate or generalized objections, which they asserted in response to all, or a number of, the Requests.  For example, Arrowood asserted, in connection with nearly every Request, that the Request was "overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and beyond the scope of the duty to defend issue . . . ."  (*See* Epstein Dec. at Ex. 9).  Likewise, defendant XL asserted, in connection with nearly every Request, that the Request was "overly broad, not calculated to lead to admissible evidence, not limited in time and beyond the limited scope of discovery allowed by the Court . . . ."  (*See* Epstein Dec. at Ex. 11).  Another example is National Union's assertion in its responses that a number of the Requests were "unduly burdensome" without providing any explanation as to why or how that was so.  (*See* Epstein Dec. at Ex. 13).

Colorado federal courts have held that boilerplate and generalized objections are not acceptable and that, where such objections are asserted without being accompanied by support or justification, they normally should be overruled.  *Greystone Constr., Inc. v. National Fire & Marine Ins. Co.,* Civ. Action No. 07-cv-00066-MSK-CBS, 2008 WL 795815, at *5 (D. Colo. Mar. 21, 2008) ("Generalized objections that a discovery request is vague, overly broad or unduly burdensome are not acceptable and should be overruled.") (citations omitted); *see also Medcorp,* 2009 WL 1049758, at *2 ("It is the objecting party's burden to show why a discovery request is objectionable, and that burden cannot be sustained merely by asserting 'boilerplate claims that the requested discovery is oppressive [or] burdensome . . . .'") (quotation omitted).  On a motion to compel, the party resisting discovery must show and support the proposition that, in spite of the broad scope of discovery under the Federal Rules, the discovery at issue should

not be allowed.  *Id.*  The generalized or blanket assertion that a discovery request is vague, overly broad, and/or unduly burdensome, by itself, is insufficient to satisfy that burden.  That being so, the Court should overrule any boilerplate or generalized objections to the Requests that were made by the Insurers.

## III.    The Insurers Have Failed To Comply With The Initial Disclosure Requirements Of Rule 26(a)

Pursuant to Federal Rule of Civil Procedure 26(a), at the commencement of an action, each party in the action must, without awaiting any discovery request, provide certain initial disclosures to the remaining parties.  Parties must disclose among other things, the name and contact information of each person likely to have discoverable information that the disclosing party may use to support its claims or defenses, along with the subjects of each person's information.  Fed. R. Civ. P. 26(a)(1)(A)(i).  If a party fails to identify a witness or provide the information required by the disclosure requirements of Rule 26(a), then that party may not make use of the witness or information to support its position in briefing any motion, at a hearing or at trial, unless the party can show that its failure to disclose was "substantially justified or is harmless."  Fed.R. Civ. P. 37(c).  "Initial disclosures should provide the parties 'with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement' . . . . 'The litigants should not indulge in gamesmanship with respect to the disclosure obligations.'"  *Hertz v. Luzenac America, Inc.*, Civ. Action No. 04-cv-1961-LTB-CBS, 2006 WL 994431, at *5 (D. Colo. Apr. 13, 2006) (brackets in original; emphasis added) (quotations and citations omitted).  National Union has engaged in such gamesmanship here.

In its initial disclosure statement (*see* Epstein Dec. at Ex. 18), National Union disclosed no less than nine individuals (and five additional categories of unnamed persons) purportedly having knowledge of the underlying *Katz Technology Lawsuit*.  With respect to those persons having

knowledge of the insurance issues in this litigation, National Union identified Lee M. Epstein, attorney for Dish Network in this case; Robert Frankel, Senior Corporate Counsel for Dish Network; and three categories of unidentified representatives of Dish Network who were purportedly responsible for notifying Dish Network's insurers of the *Katz Technology Lawsuit*, involved in the negotiations and placement of the National Union Policy, or responsible for "disclosing known risks" to National Union during the underwriting process. (Epstein Dec. Ex. 18, at 2-3). However, National Union failed to identify a single one of its representatives that National Union may use to support its claims or defenses. National Union disclosed no representative with knowledge about, among other things, the National Union insurance policy at issue, its negotiation and underwriting, the meaning and application of any of its terms, the claim for insurance coverage made by the Dish Network in connection with the underlying *Katz Technology Lawsuit*, the handling of that claim, and the ultimate denial of coverage to Dish Network. It is wholly incredible that no such persons exist.

The initial disclosures of the remaining Insurers, Arch, Arrowood, Travelers, and XL, were only marginally better. Each of those Insurers identified only a single insurer representative having information about their claims or defenses in this action. (*See* Epstein Dec. at Exs. 14 [Arrowood], 15 [Travelers], 16 [XL] & 17 [Arch]). Again, it is simply not credible that no other insurer representatives with such knowledge exist. By way of example, Arrowood has moved for summary judgment relying, in part, on the affidavit of Sue C. Clark, even though Arrowood never disclosed Ms. Clark as someone with pertinent knowledge. (*See* Epstein Dec. at ¶ 10).

In light of the foregoing, this Court should order all of the Insurers to supplement their initial disclosures by identifying all of their employees, agents or representatives with information concerning the insurance issues in this case and disclosing the subjects of that information. *See,*

*e.g.*, *Pham v. Hartford Fire Ins. Co.,* 193 F.R.D. 659, 660-61 (D. Colo. 2000) (insurer failed to meet Rule 26(a) disclosure requirement if other individuals, in addition to the lone person disclosed, had knowledge of the insurance policy language and the decision to deny coverage). To the extent the Insurers fail to do so, their use of evidence from any such witnesses in briefing on any motions, or at any hearing or trial of this matter, should be barred. Fed. R. Civ. P. 37(c).

## IV.    Dish Network Should Be Awarded Their Attorney Fees And Expenses In Making Their Motion

In addition to moving to compel discovery, as set forth above, Dish Network also seeks to recover the attorney fees and costs incurred in making their motion to compel. Federal Rule of Procedure 37(a)(5)(A) authorizes such sanctions. "This is a mandatory provision [awarding fees and costs] unless the party seeking sanctions failed to confer, the nondisclosure was 'substantially justified' or 'circumstances make an award of expenses unjust.'" *New Salida Ditch Co. v. United Fire & Cas. Ins. Co.*, Civ. Action No. 08-cv-00391-JLK-KLM, 2009 WL 2399933, at *1 (D. Colo. July 31, 2009) (quotation omitted). The award of such sanctions under Rule 37(a)(5)(A) does not require that the party against whom fees and costs are imposed have acted intentionally or in bad faith. *Id.* at *2.

Here, Dish Network conferred in good faith with the Insurers, but was unable to obtain the discovery it sought. (*See* Epstein Dec. at ¶¶ 3-5). The nondisclosure by the Insurers was not substantially justified since the law on the duty to defend as well as the conditional admittance and consideration of extrinsic evidence to determine ambiguity are well established under Colorado law. No other circumstances make an award of expenses unjust. Accordingly, the

Court should order the Insurers to pay Dish Network's attorney fees and costs incurred in the course of making its motion to compel. [16]

## **CONCLUSION**

For all the foregoing reasons, Dish Network respectfully requests that the Court grant its motion to compel and order the Insurers to produce all information responsive to Dish Network's written discovery, to make all required initial disclosures and to pay the reasonable attorneys' fees and costs incurred in making this motion.

Dated:  October 27, 2009              \_\_\_\_/s/ Lee M. Epstein_____
                                     Lee M. Epstein
                                     FRIED & EPSTEIN LLP
                                     325 Chestnut Street, Suite 900
                                     Philadelphia, PA  19106
                                     Tel.:  215-625-0123
                                     leeepstein@fried-epstein.com

                                     and

                                     Todd Mackintosh, Esq.
                                     Mackintosh Law Office, LLC
                                     1775 Sherman, Suite 1650
                                     Denver, CO  80203
                                     Tel.:  303-282-5166
                                     tmackintosh@solucian.com

                                     and

                                     Robert E. Frankel, Esq.
                                     Echostar Satellite LLC
                                     9601 South Meridian Blvd.
                                     Englewood, CO  80112
                                     Tel.:  303-723-1621
                                     robert.frankel@dishnetwork.com

                                     **Attorneys for Dish Network Corp. and
                                     Dish Network LLC**

---

[16]     In the event that the instant motion to compel is granted, Dish Network will supplement its filings for the purpose of establishing the reasonable attorneys' fees and costs incurred in making this motion.

## CERTIFICATE OF SERVICE

I certify that on October 27, 2009, I electronically filed the foregoing with the Clerk of the Court by using the court's CM/ECF system which will send notification of such filing to the individuals on the attached service list.

    /s/ Lee M. Epstein
Lee M. Epstein
FRIED & EPSTEIN LLP
325 Chestnut Street, Suite 900
Philadelphia, PA  19106
Tel.:  215-625-0123
leeepstein@fried-epstein.com

## SERVICE LIST

**Attorneys for Arrowood Indemnity Co.:**

Todd E. Jaworsky, Esq.
Lawrence M. McHeffey, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
5613 DTC Parkway, Suite 1100
Legacy Center
Greenwood Village, CO  80111-3039
Tel.:  303-226-8956 (Todd E. Jaworsky)
Tel.:  303-226-8965 (Lawrence M. McHeffey)
tjaworsky@mdmlawco.com
lmcheffey@mdmlawco.com

Roger K. Heidenreich, Esq.
Deborah C. Druley, Esq.
Sonnenschein, Nath & Rosenthal, LLP
One Metropolitan Square, #3000
St. Louis, MO  63102
Tel.:  314-259-5805
rheidenreic@sonnenschein.com
ddruley@sonnenschein.com

**Attorneys for Arch Specialty Ins.  Co.:**

Thomas N. Alfrey, Esq.
Robert J. Zavaglia, Esq.
Treece, Alfrey, Musat & Bosworth, P.C.
999 18th Street, Suite 1600
Denver, CO  80202
Tel.:  303-292-2700
talfrey@tamblaw.com
rzavaglia@tamblaw.com

**Attorneys for National Union Ins. of Pittsburgh PA:**

John W. Grund, Esq.
Della S. Nelson, Esq.
Grund, Dagner & Nelson, P.C.
1660 Lincoln Street, Suite 2800
Denver, CO  80264
Tel.:  303-830-7770
jwgrund@gdnlaw.net
dsnelson@gdnlaw.net

Richard H. Nicolaides, Jr., Esq.
Daniel I. Graham, Jr., Esq.
Bates & Carey LLP
191 North Wacker Street, Suite 2400
Chicago, IL  60606
Tel.:  312-762-3100
rnicolaides@batescarey.com
dgraham@batescarey.com
aklie@batescarey.com

**Attorneys for Travelers Indemnity Co. of America:**

Erik Robert Neusch, Esq.
Kevin F. Amatuzio, Esq.
Montgomery, Kolodny, Amatuzio & Dusbabek, LLP
1775 Sherman Street, #2100
Denver, CO  80203
Tel.:  303-592-6600
eneusch@mkadlaw.com
kamatuzio@mkadlaw.com

**Attorneys for XL Insurance America:**

Lisa F. Mickley, Esq.
Hall & Evans, LLC
1125 17th Street, Suite 600
Denver, CO  80202
Tel.:  303-628-3300
mickleyl@hallevans.com

George S. McCall, Esq.
Sedgwick, Detert, Moran & Arnold LLP
1717 Main Street, Suite 5400
Dallas, TX  75201
Tel.:  469-227-8200
george.mccall@sdma.com